MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

GRICELDA CARRERA TORRES, JOSE
ARTURO MENDEZ, GERARDO
GONZALEZ, JOSE LUIS SALAZAR, and
VICTOR BAEZ, *individually and on behalf of*
*others similarly situated,*

                            *Plaintiffs*,

            -against-

OAXACA WILLIAMSBURG LLC (D/B/A
OAXACA TAQUERIA), OAXACA
BEDFORD, LLC (D/B/A OAXACA
TAQUERIA), OAXACA BEDFORD
AVENUE LLC (D/B/A OAXACA
TAQUERIA), OAXACA FIRST AVE LLC
(D/B/A OAXACA TAQUERIA), OAXACA
MURRAY HILL, LLC (D/B/A OAXACA
TAQUERIA), OAXACA 33RD STREET LLC
(D/B/A OAXACA TAQUERIA), OAXACA
HELLS KITCHEN LLC (D/B/A OAXACA
TAQUERIA), OAXACA HALSEY, LLC (D/
B/A OAXACA TAQUERIA), DAVID
SCHNEIDER, VISHAL DHAR, MOHAMED
ALHIDAMI, and VARUN M. MALHOTRA,

                          *Defendants.*

--------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

      Plaintiffs Gricelda Carrera Torres, Jose Arturo Mendez, Gerardo Gonzalez, Jose Luis

Salazar, and Victor Baez , individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against OAXACA WILLIAMSBURG LLC (d/b/a Oaxaca Taqueria),

OAXACA BEDFORD, LLC (d/b/a Oaxaca Taqueria), OAXACA BEDFORD AVENUE LLC (d/b/a Oaxaca Taqueria), OAXACA FIRST AVE LLC (d/b/a Oaxaca Taqueria), OAXACA MURRAY HILL, LLC (d/b/a Oaxaca Taqueria), OAXACA 33RD STREET LLC (d/b/a Oaxaca Taqueria), OAXACA HELLS KITCHEN LLC (D/B/A OAXACA TAQUERIA),  OAXACA HALSEY, LLC (D/B/A OAXACA TAQUERIA), ("Defendant Corporations"), David Schneider, Vishal Dhar, Mohamed Alhidami, and VARUN M. MALHOTRA, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants OAXACA WILLIAMSBURG LLC (d/b/a Oaxaca Taqueria), OAXACA BEDFORD, LLC (d/b/a Oaxaca Taqueria), OAXACA BEDFORD AVENUE LLC (d/b/a Oaxaca Taqueria), OAXACA FIRST AVE LLC (d/b/a Oaxaca Taqueria), OAXACA MURRAY HILL, LLC (d/b/a Oaxaca Taqueria), OAXACA 33RD STREET LLC (d/b/a Oaxaca Taqueria), OAXACA HELLS KITCHEN LLC (D/B/A OAXACA TAQUERIA), OAXACA HALSEY, LLC (D/B/A OAXACA TAQUERIA), David Schneider, Vishal Dhar, Mohamed Alhidami, and VARUN M. MALHOTRA.

2.       Defendants own, operate, or control several Mexican Restaurants, located at 152 E 33rd Street, New York, NY 10016, 1116 BEDFORD AVENUE, BROOKLYN, NEW YORK, 11216, 1198 1st Avenue, New York, New York, 10065, 130 Grand St, Brooklyn, New York, 11211, 478 Halsey St, Brooklyn, NY 11233, 405 W 44TH ST NEW YORK, NY 10036 under the name "Oaxaca Taqueria."

3.      Upon information and belief, individual Defendants David Schneider, Vishal Dhar, Mohamed Alhidami, and VARUN M. MALHOTRA, serve or served as owners, managers,

principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as cooks, dishwashers, cleaners, hostess and cashiers, at the restaurants located at 152 E 33rd Street, New York, NY 10016, 1116 BEDFORD AVENUE, BROOKLYN, NEW YORK, 11216, 1198 1st Avenue, New York, New York, 10065, 130 Grand St, Brooklyn, New York, 11211, 478 Halsey St, Brooklyn, NY 11233, and 405 W 44TH ST NEW YORK, NY 10036.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

9.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

10.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

11.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

12.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

14.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate Mexican Restaurants located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

15.     Plaintiff Gricelda Carrera Torres ("Plaintiff Carrera" or "Ms. Carrera") is an adult individual residing in Raleigh County, North Carolina.

16.     Plaintiff Carrera was employed by Defendants at Oaxaca Taqueria from approximately April 2015 until on or about December 2019.

17.     Plaintiff Jose Arturo Mendez ("Plaintiff Arturo" or "Mr. Arturo") is an adult individual residing in Queens County, New York.

18.     Plaintiff Arturo was employed by Defendants at Oaxaca Taqueria from approximately 2014 until on or about April 20, 2021.

19.     Plaintiff Gerardo Gonzalez ("Plaintiff Gonzalez" or "Mr. Gonzalez") is an adult individual residing in Passaic County, New Jersey.

20.     Plaintiff Gonzalez was employed by Defendants at Oaxaca Taqueria from approximately December 2015 until on or about April 19, 2021.

21.     Plaintiff Jose Luis Salazar ("Plaintiff Salazar" or "Mr. Luis") is an adult individual residing in Queens County, New York.

22.     Plaintiff Salazar was employed by Defendants at Oaxaca Taqueria from approximately 2010 until on or about April 28, 2021.

23.     Plaintiff Victor Baez ("Plaintiff Baez" or "Mr. Baez") is an adult individual residing in Raleigh County, North Carolina.

24.     Plaintiff Baez was employed by Defendants at Oaxaca Taqueria from approximately August 2015 until on or about March 25, 2021.

*Defendants*

25.     At all relevant times, Defendants owned, operated, or controlled several Mexican Restaurants, located at 152 E 33rd Street, New York, NY 10016, 1116 BEDFORD AVENUE, BROOKLYN, NEW YORK, 11216, 1198 1st Avenue, New York, New York, 10065, 130 Grand St,

Brooklyn, New York, 11211, 478 Halsey St, Brooklyn, NY 11233, and 405 W 44TH ST NEW YORK, NY 10036 under the name "Oaxaca Taqueria."

26.    Upon information and belief, OAXACA WILLIAMSBURG LLC (d/b/a Oaxaca Taqueria) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 130 GRAND STREET, BROOKLYN, NEW YORK, 11249.

27.    Upon information and belief, OAXACA BEDFORD, LLC (d/b/a Oaxaca Taqueria) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1116 BEDFORD AVENUE, BROOKLYN, NEW YORK, 11216.

28.    Upon information and belief, OAXACA BEDFORD AVENUE LLC (d/b/a Oaxaca Taqueria) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1116 BEDFORD AVENUE, BROOKLYN, NEW YORK, 11216.

29.    Upon information and belief, OAXACA FIRST AVE LLC (d/b/a Oaxaca Taqueria) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1198 1st Avenue, New York, NY 10065.

30.    Upon information and belief, OAXACA MURRAY HILL, LLC (d/b/a Oaxaca Taqueria) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 152 EAST 33 ST., NEW YORK, NEW YORK, 10016.

31.    Upon information and belief, OAXACA 33RD STREET LLC (d/b/a Oaxaca Taqueria) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 152 E 33rd Street, New York, NY 10016.

32.    Upon information and belief, OAXACA HELLS KITCHEN LLC (D/B/A OAXACA TAQUERIA), is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 405 West 44th Street, New York, New York, 10036.

33.    OAXACA HALSEY, LLC (D/B/A OAXACA TAQUERIA), is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 478 Halsey Street, Brooklyn, New York, 112330.

34.    Defendant David Schneider is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant David Schneider is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant David Schneider possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

35.    Defendant Vishal Dhar is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Vishal Dhar is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Vishal Dhar possesses operational control over Defendant Corporations, an ownership interest in Defendant

Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

36.    Defendant Mohamed Alhidami is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Mohamed Alhidami is sued individually in his capacity as a manager of Defendant Corporations. Defendant Mohamed Alhidami possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

37.    Defendant VARUN M. MALHOTRA is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant VARUN M. MALHOTRA is sued individually in his capacity as a manager of Defendant Corporations. Defendant VARUN M. MALHOTRA possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

38.    Defendants operate several Mexican Restaurants located in multiple neighborhoods in Manhattan and Brooklyn.

39.     Individual Defendants, David Schneider, Vishal Dhar, Mohamed Alhidami, and VARUN M. MALHOTRA, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

40.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

41.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

42.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

43.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

44.     Upon information and belief, Individual Defendants David Schneider and Vishal Dhar operate Defendant Corporations as either alter egos of themselves and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)   transferring assets and debts freely as between all Defendants,

d)   operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)   operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)   intermingling assets and debts of their own with Defendant Corporations,

g)   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)   Other actions evincing a failure to adhere to the corporate form.

45.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

46.     In each year from 2015 to 2021, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

47.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

48.     Plaintiffs are former employees of Defendants who were employed as cooks, dishwashers, cleaners, hostess and cashiers.

49.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Gricelda Carrera Torres*

50.    Plaintiff Carrera was employed by Defendants from approximately April 2015 until on or about December 2019.

51.    Defendants employed Plaintiff Carrera as a cook.

52.    Plaintiff Carrera regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

53.    Plaintiff Carrera's work duties required neither discretion nor independent judgment.

54.    Throughout her employment with Defendants, Plaintiff Carrera regularly worked in excess of 40 hours per week.

55.    From approximately April 2015 until on or about 2016, Plaintiff Carrera worked at the 48 Greenwich Avenue location from approximately 10:00 a.m. until on or about 12:00 a.m. to 1:00 a.m., 6 days a week (typically 84 to 87 hours per week).

56.    From approximately 2016 until on or about November 2017, Plaintiff Carrera worked at the 48 Greenwich Ave location from approximately 12:00 p.m. until on or about 12:00 a.m., 6 days a week (typically 72 hours per week).

57.    From approximately December 2017 until on or about January 2018, Plaintiff Carrera worked at various business locations from approximately 5:00 p.m. until on or about 11:00 p.m., 2 days per week (typically 12 hours per week).

58.    Throughout her employment, Defendants paid Plaintiff Carrera her wages by check.

59.    From approximately April 2015 until on or about December 2015, Defendants paid Plaintiff Carrera a fixed salary of $600 per week.

60.    From approximately January 2016 until January 2018, Defendants paid Plaintiff Carrera a fixed salary of $1,100 per week.

61.    From approximately March 2018 until on or about December 2019, Defendants paid Plaintiff Carrera $15 per hour.

62.    Plaintiff Carrera's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

63.    For example, Defendants required Plaintiff Carrera to work an additional 1 hour past her scheduled departure time three days a week, and did not pay her for the additional time she worked.

64.    Defendants never granted Plaintiff Carrera any breaks or meal periods of any kind.

65.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Carrera regarding overtime and wages under the FLSA and NYLL.

66.    Defendants did not provide Plaintiff Carrera an accurate statement of wages, as required by NYLL 195(3).

67.    In fact, Defendants did not correctly report the hours Plaintiff Carrera worked on her paystubs.

68.    Defendants did not give any notice to Plaintiff Carrera, in English and in Spanish (Plaintiff Carrera's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Jose Arturo Mendez*

69.    Plaintiff Arturo was employed by Defendants from approximately 2014 until on or about April 20, 2021.

70.     Defendants employed Plaintiff Arturo as a cook, dishwasher, cleaner, stock worker and hostess.

71.     Plaintiff Arturo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

72.     Plaintiff Arturo's work duties required neither discretion nor independent judgment.

73.     Throughout his employment with Defendants, Plaintiff Arturo regularly worked in excess of 40 hours per week.

74.     From approximately May 2015 until on or about October 2019, Plaintiff Arturo worked at the 1709 2nd Avenue 88th &, E 89th St location from approximately 10:00 a.m. until on or about 10:00 p.m., on Mondays, from approximately 10:00 a.m. until on or about 10:30 p.m., Tuesdays through Fridays, and from approximately 10:00 a.m. until on or about 5:00 p.m., on Saturdays (typically 69 hours per week).

75.     From approximately November 2019 until on or about May 2020, Plaintiff Arturo worked at the 405 W 44th Street location from approximately 10:00 a.m. until on or about 10:00 p.m., on Mondays and from approximately 10:00 a.m. until on or about 10:30 p.m., Tuesdays through Fridays (typically 62 hours per week).

76.     From approximately June 2020 until on or about April 20, 2021, Plaintiff Arturo worked at the 152 E 33rd Street location from approximately 10:00 a.m. until on or about 10:00 p.m., on Mondays and from approximately 10:00 a.m. until on or about 10:30 p.m., Tuesdays through Fridays (typically 62 hours per week).

77.     From approximately May 2015 until on or about April 20, 2021, Defendants paid Plaintiff Arturo his wages by personal check.

78.     From approximately May 2015 until on or about December 2016, Defendants paid Plaintiff Arturo a fixed salary of $700 per week.

79.     From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Arturo a fixed salary of $800 per week.

80.     From approximately January 2018 until on or about January 2019, Defendants paid Plaintiff Arturo a fixed salary of $850 per week.

81.     From approximately February 2019 until on or about October 2019, Defendants paid Plaintiff Arturo a fixed salary of $940 per week.

82.     From approximately November 2019 until April 20, 2021, Defendants paid Plaintiff Arturo a fixed salary of $860 per week.

83.     Plaintiff Arturo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

84.     For example, Defendants required Plaintiff Arturo to work 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

85.     Defendants never granted Plaintiff Arturo any breaks or meal periods of any kind.

86.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Arturo regarding overtime and wages under the FLSA and NYLL.

87.     Defendants did not provide Plaintiff Arturo an accurate statement of wages, as required by NYLL 195(3).

88.     Defendants did not give any notice to Plaintiff Arturo, in English and in Spanish (Plaintiff Arturo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

89.     Defendants required Plaintiff Arturo to purchase "tools of the trade" with his own funds—including two knives and several light bulbs for the restaurant.

*Plaintiff Gerardo Gonzalez*

90.     Plaintiff Gonzalez was employed by Defendants from approximately December 2015 until on or about April 19, 2021.

91.     Defendants employed Plaintiff Gonzalez as a cook.

92.     Plaintiff Gonzalez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

93.     Plaintiff Gonzalez's work duties required neither discretion nor independent judgment.

94.     Throughout his employment with Defendants, Plaintiff Gonzalez regularly worked in excess of 40 hours per week.

95.     From approximately December 2015 until on or about December 2017, Plaintiff Gonzalez worked at the 1116 Bedford Ave, Brooklyn, NY 11216 location from approximately 10:00 a.m. until on or about 10:00 p.m., 6 days a week (typically 72 hours per week).

96.     From approximately January 2018 until on or about Mid-January 2019, Plaintiff Gonzalez worked at the 1198 1st Avenue, New York, NY 10065 location from approximately 4:00 p.m. until on or about 12:00 a.m., 5 days a week and from approximately 10:00 a.m. until on or about 10:00 p.m., 1 day a week (typically 52 hours per week).

97.     From approximately Mid-January 2019 until on or about March 2020, Plaintiff Gonzalez worked at the 130 Grand St, Brooklyn, NY 11211 location from approximately 5:00 p.m. until on or about 12:00 a.m., 5 days a week and from approximately 10:00 a.m. until on or about 10:00 p.m., 1 day a week (typically 47 hours per week).

98.     From approximately April 2020 until on or about July 15, 2020, Plaintiff Gonzalez worked at the 130 Grand St, Brooklyn, NY 11211 location from approximately 10:00 a.m. until on or about 11:00 p.m., 7 days a week (typically 91 hours per week).

99.     From approximately July 16, 2020 until on or about February 2021, Plaintiff Gonzalez worked at the 130 Grand St, Brooklyn, NY 11211 location from approximately 10:00 a.m. until on or about 11:00 p.m., 4 days a week (typically 52 hours per week).

100.    From approximately March 2021 until on or about April 19, 2021, Plaintiff Gonzalez worked at 152 E 33rd St, New York, NY 10016 location from approximately 5:00 p.m. until on or about 1:00 a.m., 1 day a week, from approximately 12:00 p.m. until on or about 1:00 a.m., 1 day a week, and from approximately 11:00 a.m. until on or about 10:00 p.m., 1 day a week at the 405 W 44th Street, New York, New York, 10036 location (typically 32 hours per week).

101.    From approximately December 2015 until on or about December 2016, Defendants paid Plaintiff Gonzalez his wages in cash.

102.    From approximately January 2017 until on or about April 2021, Defendants paid Plaintiff Gonzalez his wages by check.

103.    For the month of December 2015, Defendants paid Plaintiff Gonzalez $8.75 per hour.

104.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Gonzalez $9.00 per hour.

105.    From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Gonzalez $11.00 per hour.

106.    From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Gonzalez $13.00 per hour.

107.    From approximately January 2019 until on or about April 2021, Defendants paid Plaintiff Gonzalez $15.00 per hour.

108.    Plaintiff Gonzalez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

109.    For example, Defendants required Plaintiff Gonzalez to work 30 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

110.    Defendants never granted Plaintiff Gonzalez any breaks or meal periods of any kind.

111.    On a number of occasions, Defendants required Plaintiff Gonzalez to sign a document, the contents of which he was not allowed to review in detail.

112.    In addition, in order to get paid, Plaintiff Gonzalez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

113.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gonzalez regarding overtime and wages under the FLSA and NYLL.

114.    Defendants did not provide Plaintiff Gonzalez an accurate statement of wages, as required by NYLL 195(3).

115.    In fact, Defendants adjusted Plaintiff Gonzalez's paystubs so that they reflected inaccurate hours worked.

116.    Defendants did not give any notice to Plaintiff Gonzalez, in English and in Spanish (Plaintiff Gonzalez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

117.    Defendants required Plaintiff Gonzalez to purchase "tools of the trade" with his own funds—including oils, salt bottles, and toilet paper.

*Plaintiff Jose  Luis Salazar*

118.    Plaintiff Salazar was employed by Defendants from approximately 2010 until on or about April 28, 2021.

119.    Defendants employed Plaintiff Salazar as a hamburger maker, taco maker and cashier.

120.    Plaintiff Salazar regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

121.    Plaintiff Salazar's work duties required neither discretion nor independent judgment.

122.    Throughout his employment with Defendants, Plaintiff Salazar regularly worked in excess of 40 hours per week.

123.    From approximately May 2015 until on or about December 2019, Plaintiff Salazar worked at the Beaver Street location from approximately 10:00 a.m. until on or about 10:00 p.m., 6 days a week (typically 72 hours per week).

124.    From approximately January 2020 until on or about December 2020, Plaintiff Salazar worked at the Beaver Street location two weeks each month from approximately 10:00 a.m. until on or about 10:00 p.m., 5 days a week (typically 60 hours per week).

From approximately January 2020 until on or about December 2020, Plaintiff Salazar worked at the Beaver Street location two weeks each month from approximately 10:00 a.m. until on or about 10:00 p.m., 7 days a week (typically 84 hours per week).

125.    From approximately January 2021 until on or about April 2021, Plaintiff Salazar worked at the 33rd Street location from approximately 5:00 p.m. until on or about 1:00 a.m., on Sundays, from approximately 6:00 p.m. until on or about 1:40 a.m., Mondays and Wednesdays and from approximately 12:00 p.m. until on or about 1:40 a.m., on Thursdays, at the Bedford Avenue location from approximately 12:00 p.m. until on or about 1:00 a.m., on Fridays and at the West 44th

Street location from approximately 5:00 p.m. until on or about 1:00 a.m., on Tuesdays (typically 52 hours per week).

126.    Throughout his employment, Defendants paid Plaintiff Salazar his wages by personal check.

127.    From approximately 2015 until on or about February 2017, Defendants paid Plaintiff Salazar a fixed salary of $750 per week.

128.    From approximately February 2017 until on or about May 2019, Defendants paid Plaintiff Salazar a fixed salary of $1,010 per week.

129.    From approximately May 2019 until on or about April 2021, Defendants paid Plaintiff Salazar a fixed salary of $900 per week.

130.    From approximately January 2020 until on or about December 2020, Defendants paid Plaintiff Salazar a fixed salary of $1,010 on the weeks he worked 7 days.

131.    Plaintiff Salazar's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

132.    For example, Defendants required Plaintiff Salazar to work 40 minutes to 1 hour past his scheduled departure time four times a week, and did not pay him for the additional time he worked.

133.    Defendants never granted Plaintiff Salazar any breaks or meal periods of any kind.

134.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Salazar regarding overtime and wages under the FLSA and NYLL.

135.    Defendants did not provide Plaintiff Salazar an accurate statement of wages, as required by NYLL 195(3).

136.    In fact, Defendants adjusted Plaintiff Salazar's paystubs so that they reflected inaccurate wages and hours worked.

137.    Additionally, every night Defendants at the 33rd Street location would make Plaintiff Salazar punch out and continue working for an extra hour.

138.    Defendants did not give any notice to Plaintiff Salazar, in English and in Spanish (Plaintiff Salazar's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

139.    Defendants required Plaintiff Salazar to purchase "tools of the trade" with his own funds—including pants and toilet paper.

*Plaintiff Victor Baez*

140.    Plaintiff Baez was employed by Defendants from approximately August 2015 until on or about March 25, 2021.

141.    Defendants employed Plaintiff Baez as a cashier and store manager.

142.    Plaintiff Baez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

143.    Plaintiff Baez's work duties required neither discretion nor independent judgment.

144.    From approximately August 2015 until on or about December 2017, Plaintiff Baez worked from approximately 5:00 p.m. until on or about 12:00 a.m., 4 days a week (typically 28 hours per week).

145.    From approximately January 2018 until on or about December 2019, Plaintiff Baez worked from approximately 10:00 a.m. until on or about 10:00 p.m., 4 days a week (typically 48 hours per week).

146.    From approximately January 2020 until on or about December 2020, Plaintiff Baez worked from approximately 10:00 a.m. until on or about 10:00 p.m., 5 days a week (typically 60 hours per week).

147.    From approximately January 2021 until on or about March 25, 2021, Plaintiff Baez worked from approximately 5:00 p.m. until on or about 1:00 a.m., 4 days a week and from approximately 11:00 a.m. until on or about 1:00 a.m., 3 days a week (typically 74 hours per week).

148.    From approximately August 2015 until on or about 2016, Defendants paid Plaintiff Baez his wages in cash.

149.    From approximately 2016 until on or about March 2021, Defendants paid Plaintiff Baez his wages by check.

150.    From approximately August 2015 until on or about December 2016, Defendants paid Plaintiff Baez $10.00 per hour.

151.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Baez $10.00 per hour.

152.    From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Baez $15.00 per hour.

153.    From approximately January 2018 until on or about March 2021, Defendants paid Plaintiff Baez $17.00 per hour.

154.    Defendants never granted Plaintiff Baez any breaks or meal periods of any kind.

155.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Baez regarding overtime and wages under the FLSA and NYLL.

156.    Defendants did not provide Plaintiff Baez an accurate statement of wages, as required by NYLL 195(3).

157.    In fact, Defendants adjusted Plaintiff Baez's paystubs so that they reflected inaccurate wages and hours worked.

158.    Defendants did not give any notice to Plaintiff Baez, in English and in Spanish (Plaintiff Baez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

159.    Defendants required Plaintiff Baez to purchase "tools of the trade" with his own funds—including kitchen knives and light bulbs.

*Defendants' General Employment Practices*

160.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

161.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

162.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

163.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

164.    Defendants' time keeping system did not reflect the actual hours that Plaintiff Carrera worked.

165.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

166.     On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail. Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked. Defendants paid Plaintiffs their wages in a combination of check and cash .

167.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

168.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

169.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

170.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

171.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum

wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

172.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

173.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

174.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

175.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

176.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

177.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

178.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

179.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

180.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

181.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

182.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

183.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

184.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

185.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

186.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

187.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

188.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

189.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

190.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

191.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

192.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

193.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs' overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

194.    Defendants' failure to pay Plaintiffs' overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

195.    Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

196.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

197.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

198.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

199.    Plaintiffs were damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

200.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

201.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by

the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

202.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

203.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

204.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

205.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

206.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

207.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

208.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

209.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

210.     Defendants did not pay Plaintiffs' on a regular weekly basis, in violation of NYLL §191.

211.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)      Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)      Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)      Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)      Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)      Declaring that Defendants violated the notice and recordkeeping requirements of

the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)    Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)    All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

      May 28, 2021

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:       /s/ Michael Faillace
          Michael Faillace [MF-8436]
          60 East 42nd Street, Suite 4510
          New York, New York 10165
          Telephone: (212) 317-1200
          Facsimile: (212) 317-1620
          *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 16, 2021

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Gricelda Carrera Torres

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           16 de April del 2021

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 19, 2021

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Gerardo  Gonzalez

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:          *Gerardo Gonzalez*

Date / Fecha:               19 de april 2021

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 31, 2021

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Jose Arturo Mendez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          31 de Marzo del 2021

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 31, 2021

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Luis Salazar

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     31 de marzo

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                                Telephone: (212) 317-1200
New York, New York 10165                                             Facsimile: (212) 317-1620
_____

Faillace@employmentcompliance.com


                                                                April 2, 2021

BY HAND


TO:      Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**


Name / Nombre:                           Victor Baez
Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                        Victor Baez

Date / Fecha:                               2 de abril 2021


*Certified as a minority-owned business in the State of New York*